# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICTOR VELAZQUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-CV-017-CVE-TLW |
| | ) |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Partial Motion to Dismiss and Brief in Support (Dkt. # 10). Defendant Helmerich & Payne International Drilling Co. (Helmerich & Payne) argues that plaintiff failed to exhaust his administrative remedies as to some of his claims of retaliation, and it asks the Court to dismiss those claims for lack of subject matter jurisdiction. Defendant also asks the Court to dismiss plaintiff's intentional infliction of emotional distress claim for failure to state a claim upon which relief can be granted.

## I.

Victor Velazquez claims that he was hired by Helmerich & Payne as a welder in January 2010, and when he was hired the floor manager at the time assured Velazquez that he would soon be promoted to the position of lead man. Dkt. # 2-3, at 2. The floor manager left Helmerich & Payne and he was replaced by Jim Austin. Id. Velazquez claims that he repeatedly asked to be promoted to the position of lead man and Austin told Velazquez to "wait." Id. He alleges that less skilled Caucasian welders with less seniority were promoted to the position of lead man and that other Hispanic workers were also passed over for promotion. Id. at 3. Velazquez spoke to the plant

manager, Venkat Talladivedula, and Velazquez was again told that he needed to wait for a promotion. Id.

Velazquez also claims that he was subject to racial slurs and discriminatory treatment from co-workers. A co-worker allegedly told Velazquez "not to get his back wet" on multiple occasions. Id. He states that he reported the incidents to the human resources department at Helmerich & Payne, but it is not clear from the allegations of the petition if he made a formal complaint of discrimination or if he requested additional investigation of the matter. Id. He claims that a co-worker, Terry Wells, attempted to incite a fight between Velazquez and another co-worker for the amusement of others. Id. Wells also allegedly told Velazquez that a Mexican would never be promoted, and Velazquez told Wells that he found the comments offensive. Id. at 4. Wells allegedly encouraged another employee to put tape over Velazquez's mouth. Id. On January 10, 2014, Velazquez made arrangements with Wells to leave work early to pick up his daughter at school, but when Velazquez got ready to leave Wells rescinded his permission for Velazquez to leave work early. Id. Velazquez felt that he had no choice and left work to pick up his daughter. Id. When Velazquez returned to work the next work day, Wells and another supervisor, Tim Owens, asked Velazquez why he left early and Wells allegedly denied that he had ever given Velazquez permission to leave early. Id. Owens told Velazquez to go home because he was "too angry" and Wells allegedly taunted Velazquez as he left. Id. Velazquez claimed that he would discuss the matter with the human resources department. Id. Velazquez returned to work the following day and he was told that he was being fired because he had threatened to harm Wells. Id. at 4. Owens allegedly told Velazquez that no one would believe his claims of mistreatment because he was Mexican. Id. at 4-5.

Velazquez filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he was discriminated against on the basis of his national origin, but he did not check the box for retaliation. Dkt. # 10-1, at 1. The complete factual narrative describing Velazquez's claims states as follows:

> I was hired on or about January 6, 2010 in the position of Welder. At my time of hire, I was assured by the Floor Manager that I would quickly be promoted to Lead Man however he left employment shortly thereafter. Over the duration of my employment, I repeatedly asked about promotion. I was consistently told by several managers that I needed to wait. Less qualified American (Caucasian) employees, some with less seniority, were routinely promoted over me. I was also harassed and subjected to derogatory comments regarding Mexicans. Although my output of work product was consistently at the top, I received less bonus pay than American (Caucasian) employees. I complained several times, however, nothing changed. On or about January 10, 2014, I made arrangements with my manager, Terry Wells, American (Caucasian), to leave work early. When the time for me to leave arrived, Mr. Wells refused to let me go. I left anyway as I had no choice. When I returned to work on or about January 11, 2014 I was discharged.

Id. Velazquez had previously submitted a general intake questionnaire to the EEOC, and he checked the boxes for race, national origin, and color for the claims alleged against his former employer. He did not check the box for retaliation on his general intake questionnaire. Dkt. # 12-1, at 2. The general intake questionnaire and accompanying narrative were prepared with the assistance of counsel. Id. at 4.

Velazquez received a right to sue letter from the EEOC and he filed this case in Tulsa County District Court alleging claims of national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), 42 U.S.C. § 1981, and the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA). He also alleges state law claims of negligent hiring and supervision and intentional infliction of emotional distress. Helmerich & Payne removed the case to this Court on January 9, 2015.

## II.

The exhaustion of administrative remedies is a jurisdictional prerequisite under Title VII, and defendant's motion to dismiss should be treated as a Fed. R. Civ. P. 12(b)(1) motion to the extent that it asserts that plaintiff failed to allege certain claims in his EEOC charge. See Shikles v. Sprint/United Management Co., 426 F.3d 1304, 1317 (10th Cir. 2005); Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). In considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03. Defendant relies on evidence outside the pleadings, specifically plaintiff's EEOC charge, and the Court will construe the motion as a factual attack on the jurisdictional facts alleged by plaintiff. In ruling on a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment. Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court

4

had authority to review evidence outside the pleadings on issue of exhaustion of administrative remedies without converting defendant's motion to dismiss into a motion for summary judgment).

Defendant also seeks dismissal of plaintiff's claim for intentional infliction of emotional distress based on failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

**A.**

Defendant argues that plaintiff failed to exhaust his administrative remedies before bringing retaliation claims against defendant, because plaintiff did not check the box for retaliation in his EEOC charge and there is nothing in his factual narrative that would suggest that he intended to bring a retaliation claim.[1] Dkt. # 10, at 3-4. Plaintiff responds that the factual narrative in the EEOC charge and the facts alleged in his general intake questionnaire provide sufficient notice that he intended to allege a retaliation claim against defendant. Dkt. # 12, at 4-5.

It is clearly established that a plaintiff alleging claims under Title VII must exhaust his administrative remedies before filing suit. Shikles, 426 F.3d at 1317. "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." Jones v. UPS, Inc., 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005)). A plaintiff must exhaust his administrative remedies as to each discrete act of discrimination before filing suit. Apsley v. Boeing, Co., 691 F.3d 1184, 1210 (10th Cir. 2012). Courts should liberally construe the allegations of an EEOC charge when determining if a plaintiff has exhausted his administrative remedies for claims arising under Title VII. Jones, 502 F.3d at 1186; MacKenzie, 414 F.3d at 1274; Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004). However, the failure to check the box for a particular type of discrimination claim gives rise to a presumption "that the charging party is not asserting claims represented by that box." Jones,

---

[1] Exhaustion of administrative remedies is not required under § 1981 and defendant does not seek dismissal of plaintiff's § 1981 retaliation claim. See Aramburu v. Boeing Co., 112 F.3d 1398, 1410 n. 9 (10th Cir. 1997).

6

502 F.3d at 1186. The presumption may be rebutted if "the text of the charge clearly sets forth the basis of the claim." Id.

Plaintiff's EEOC charge shows that he intended to allege a claim of national origin discrimination against defendant, because he checked the box for national origin and the factual narrative supports such a claim. Dkt. # 10-1, at 1. However, the box for retaliation is not checked and there is a presumption that plaintiff did not intend to bring a retaliation claim. The Court has reviewed the narrative provided in the EEOC charge, and the specific facts alleged by plaintiff do not provide notice that plaintiff also intended to allege a retaliation claim. Although plaintiff makes a vague reference that he "complained," there is nothing that would suggest that he made a formal complaint of discrimination to his employer or that he was retaliated against for making any complaints. Plaintiff asks the Court to consider allegations contained in his general intake questionnaire but that were not included in the narrative in his EEOC charge in determining if defendant was on notice that he intended to allege a retaliation claim. In some circumstances, a general intake questionnaire can be treated as a formal charge of discrimination. Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008). However, the Tenth Circuit has found that a plaintiff failed to exhaust his administrative remedies when a claim was included in a general intake questionnaire but omitted from a subsequently filed formal charge of discrimination. Green v. JP Morgan Chase Bank Nat's Ass'n, 501 F. App'x 727, 732 (10th Cir. Nov. 1, 2012). Even if the Court considered the general intake questionnaire, plaintiff checked the boxes for race, national origin, and color discrimination, and he did not check the box for retaliation. There are some vague allegations that he made complaints about the conduct of his co-workers, but he makes no allegations that he was retaliated against for making such complaints. The Court finds that plaintiff failed to exhaust

his administrative remedies as to his Title VII retaliation claim and the Court lacks subject matter jurisdiction over this claim. Plaintiff's failure to exhaust his retaliation claim also deprives this Court of subject matter jurisdiction over his OADA retaliation claim. Green, 501 F. App'x at 732; Martin v. Duncan Bit Servs. Inc., 2012 WL 3679537, *4 (W.D. Okla. Aug. 24, 2012); Barham v. K-Mart Corp., 2010 WL 3650684, *4 (N.D. Okla. Sep. 14, 2010).

**B.**

Defendant also seeks the dismissal of plaintiff's intentional infliction of emotional distress claim on the ground that plaintiff has not adequately alleged that defendant engaged in extreme and outrageous conduct or that he suffered severe emotional distress. Dkt. # 10, at 5-7. Plaintiff responds that the allegations of his petition are sufficient to state an intentional infliction of emotional distress claim, but he requests leave to file an amended petition reasserting this claim if the Court finds that his allegations are insufficient. Dkt. # 12, at 6-11.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was

9

not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Defendant argues that the conduct alleged in the petition was not extreme and outrageous as a matter of law. Dkt. # 10, at 5. The Court has reviewed the allegations of plaintiff's petition and finds that his allegations are sufficient at this stage of the case to state a plausible claim that defendant engaged in extreme and outrageous conduct. Accepting the well-pleaded allegations of the petition as true, plaintiff claims that he was subjected to racial slurs and that defendant promoted one of the employees, Wells, who was primarily responsible for making such statements. Dkt. # 2-3, at 3. Plaintiff claims that Wells threw pieces of scrap metal at him and that Wells attempted to incite a fight between plaintiff and an African-American co-worker. Id. Wells allegedly told plaintiff on multiple occasions that a Mexican would never be promoted and that Wells had a co-worker put tape over plaintiff's mouth. Id. at 3-4. Plaintiff claims that he arranged to leave work early to pick up his daughter, but Wells refused to allow plaintiff to leave work when the time came. Id. at 4. Wells told another supervisor, Owens, that plaintiff left work early without permission, and plaintiff claims that Owens faulted plaintiff for disregarding Wells' instructions. Id. Owens told plaintiff to leave work for the day because plaintiff was "too angry," and Wells followed plaintiff and taunted him as he left. Wells claimed that plaintiff made violent threats against Wells, and plaintiff states that his employment was terminated because of Wells' allegations. Id. Plaintiff told Owens that he

would file a lawsuit, and Owens allegedly said that no one would believe plaintiff because he was Mexican. At this stage of the case, plaintiff's allegations are sufficient to meet his burden under Twombly to make specific, non-conclusory allegations that defendant engaged in extreme and outrageous conduct.

Defendant also argues that plaintiff has failed to allege that he suffered "severe emotional distress," and this is an essential element of an intentional infliction of emotional distress claim. Dkt. # 10, at 6. Plaintiff's petition contains only a vague allegation that he suffered "actual emotional distress due to the actions of Defendant," and federal courts in Oklahoma considering this issue have found that such general allegations of emotional distress do not comply with federal pleading requirements. Wheeler v. Spirit Aerosystems, Inc., 2013 WL 5520012, *6 (N.D. Okla. Oct. 1, 2013); Youngblood v. TCIM Servs. Inc., 2011 WL 3111958, *5 (N.D. Okla. July 26, 2011); Robbins Motorsports, LLC v. Nat'l Fire & Marine Ins. Co., 2011 2174911, *4 (E.D. Okla. June 3, 2011); Peterson v. Grisham, 2008 WL 4363653, *7 (E.D. Okla. Sept. 17, 2008). Plaintiff must allege that he suffered "severe" emotional distress and at least some non-conclusory allegations suggesting that the emotional distress was "so severe that 'no reasonable person could be expected to endure it.'" Al-Kazaz v. Unitherm Food Systems, Inc., 2014 WL 1411391, *5 (N.D. Okla. Apr. 11, 2014). Plaintiff's intentional infliction of emotional distress claim should be dismissed due to his failure to adequately allege severe emotional distress, but he will be granted leave to file an amended complaint if he can reallege this claim with sufficient facts to state that he suffered severe emotional distress as a result of defendant's conduct.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss and Brief in Support (Dkt. # 10) is **granted**. Plaintiff's intentional infliction of emotional distress claim (count

four) is **dismissed**. Count three of the petition is **dismissed** as to plaintiff's Title VII claim for retaliation, and count six is **dismissed** to the extent that plaintiff seeks relief for retaliation under the OADA. Count three remains pending as to plaintiff's § 1981 retaliation claim, and count six remains pending as to plaintiff's OADA claim based on national origin discrimination.

    **IT IS FURTHER ORDERED** that plaintiff may file an amended complaint realleging his intentional infliction of emotional distress claim no later than **March 6, 2015**.

    **DATED** this 27th day of February, 2015.

                                                 CLAIRE V. EAGAN
                                                 UNITED STATES DISTRICT JUDGE